UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| FABIAN SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 22-cv-1199-JBM |
| ) | |
| MARTIN L MATHERLY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER

Plaintiff Fabian Santiago, proceeding *pro se*, has filed a complaint under 42 U.S.C. § 1983 alleging claims of retaliation and due process violations while he was incarcerated at Hill Correctional Center ("Hill"). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ALLEGATIONS

First, the Court notes that Plaintiff attached 227 pages of exhibits to his complaint. For purposes of this Merit Review Order, the Court did not review Plaintiff's voluminous exhibits. *See Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861, at *1 (W.D. Wis. Mar. 26, 2007) (Plaintiff's grievances and prison officials' responses were not "necessary to the complaint."); *see*

1

*also Spivey v. Pierce*, No. 10-cv-1050, 2010 WL 2331174, at n. 2 (C.D. Ill. June 9, 2010) ("Though proceeding *pro se*, [Plaintiff] must set out his facts and arguments in a coherent manner, rather than merely dumping all potentially-relevant documents upon the Court.").

Plaintiff alleges that in March or April 2019, he was housed in a cell with Parson, an inmate who was well known for escaping his cell and making and consuming alcoholic beverages. Plaintiff alleges that Parson was regularly intoxicated, hostile, threatened Plaintiff with physical violence, and brutally attacked another inmate. Plaintiff submitted requests for an immediate cell transfer to Defendants Haase and Trembley and filed a grievance on April 11, 2019, to no avail. He claims that Defendants Haase and Trembley subjected him to retaliatory cell moves because he reported staff misconduct and filed lawsuits.

At some point, Parson learned that Plaintiff had requested to move to a different cell. Plaintiff alleges that Parson was angry and gathered his associates from the Vice Lords Street Gang and an inmate called "J-Rock" to threaten and assault Plaintiff.

On May 15, 2019, Plaintiff was moved to a different cell and placed with inmate Kelly. Plaintiff and Kelly got along, but they were moved to different housing units on August 9, 2019. Plaintiff was transferred to a cell with inmate Wiley, who Plaintiff claims was seriously mentally ill. Plaintiff claims that he was transferred in retaliation for filing a lawsuit (*Santiago v. Bradley, et al.* – Case No. 17-989-MAB), because he was scheduled for a deposition in that case three days later on August 12, 2019. While housed with inmate Wiley, Plaintiff claims that he experienced heated arguments and threats of physical violence.

On August 9, 2019, Plaintiff filed a grievance about problems with Wiley and the continuous threat that Parson posed. On August 13, 2019, Defendant J. Simpson responded to

Plaintiff's grievance and allegedly refused to take corrective action because Plaintiff's cell transfer had been an administrative decision.

On August 15, 2019, Defendant Johnson, a correctional officer, informed Plaintiff that he was being transferred to (1)(D)-(22), which was the same housing unit where Parson and members of his gang were housed. Plaintiff informed Defendant Johnson that he could not move to that unit. During an interview with Defendant Lieutenant Williams, Plaintiff told Williams that Parson and the other members of his gang would pose a threat to Plaintiff's health and safety. Plaintiff asked Defendant Williams to place Parson on his enemies list. Plaintiff alleges that Defendant Williams ordered him to accept the transfer and failed to contact the internal affairs unit or the assignment/placement staff to conduct a reassignment. When Plaintiff refused the housing assignment, Defendant Williams directed his immediate transfer to the (4)(C) wing, where Plaintiff was placed in (C) grade status, underwent a complete body strip search, lost the use of electronics, was not allowed to have any clothing except underwear, and was forced to wear a filthy gray jumpsuit.

Plaintiff states that he was brought before the Adjustment Committee on August 21, 2019, to address the disciplinary charges that had been brought against him for allegedly disobeying a direct order. Defendants Martin Matherly and Jamar Range presided over the hearing. Plaintiff asked Defendant Matherly to recuse himself based on a conflict of interest because Plaintiff had named Defendant Matherly in a lawsuit which was still pending, but Defendant Matherly refused to recuse himself. Plaintiff alleges that he was found guilty of the disciplinary charges. The Adjustment Committee sanctioned him with two months of (C) grade, denied him access to audio/visual devices and the dayroom for seven days, and revoked fifteen days of GCC.

On August 28, 2019, Plaintiff encountered Defendant Matherly during lunch chow lines and demanded that his typewriter be returned to him. Defendant Matherly responded that he would look into the matter. On August 28, 2019, Plaintiff sent two separate correspondences to Defendant Williams and Defendant Christopher McLaughlin, the Assistant Warden, to demand the immediate return of his typewriter. On August 29, 2019, Plaintiff was apprised by Defendant Williams and Lieutenant Sheppard that his typewriter was being illegally confiscated by Defendant Little. Plaintiff filed a grievance about his typewriter on September 1, 2019. Plaintiff claims that he was denied the right to have his typewriter while he was detained in (4)(C) because he initiates civil litigation against the Illinois Department of Corrections ("IDOC"). Due to the loss of his typewriter, Plaintiff declared a hunger strike on September 13, 2019, which allegedly lasted five days and caused Plaintiff to lose fifteen pounds.

On November 11, 2019, Plaintiff alleges that he was in a line to go to the dining area for lunch when he encountered inmate J-Rock, who threatened Plaintiff with physical violence. Plaintiff claims that they would have engaged in a physical confrontation, but numerous prison guards were in the vicinity. Plaintiff filed a grievance regarding the matter on November 11, 2019. Plaintiff claims that Defendant Livingston, an internal affairs unit correctional officer, falsely stated that Parson and J-Rock were listed as Plaintiff's enemies.

Plaintiff claims that Defendants Haase and Trembley subjected him to another retaliatory cell move by placing him in cell (2)(D)-(52) with inmate Davis in November 2019. Plaintiff alleges that Davis was known for manufacturing liquor and was an alcoholic, which put Plaintiff at risk for being punished and placed in segregation. He also alleges that Davis was a known sexual predator, stalked the female staff members, and made loud noises throughout the night that kept

4

Plaintiff awake. Plaintiff forwarded several correspondences to Defendants Haase and Trembley to request a cell transfer to avoid a physical confrontation with Davis.

On December 11, 2019, Plaintiff was transferred to one (1) house where J-Rock and Parson resided. Plaintiff states that he spoke with Defendant Robinson, the housing segreant, about his concerns, but Robinson allegedly told him that he checked the computer and Plaintiff had no known enemies in one house. Plaintiff declared another hunger strike and claims that he was forced to refuse the housing assignment. He claims that Defendant Robinson refused to summon the housing lieutenant and placed him in segregation.

When Plaintiff arrived in segregation for processing, he encountered Defendant Trembley, who Plaintiff alleges admitted to transferring Plaintiff to one house and falsely claimed there was no bed space available in other housing units. On December 11, 2019, Plaintiff was assigned to (4)(B)-(25), which he claims was freezing and flooded every day.

Plaintiff states that he was given a photo array to identify J-Rock and that Defendant Livingston finally placed J-Rock on Plaintiff's list of enemies.

Plaintiff was then moved to (3)(D)-(15) with inmate Dantzler, who was allegedly aggressive and mentally disturbed. Dantzler and Plaintiff did not get along, and Plaintiff requested a transfer on December 24, 2019. Plaintiff was interviewed by Defendants Little, Livingston, and Cory Scheland.

On January 5, 2020, Plaintiff was assigned to a cell with an inmate who was being investigated by the internal affairs unit for allegedly sexually assaulting his previous cellmate. Plaintiff claims that this cell transfer was also retaliatory. He declared another hunger strike and was placed in housing location orientation (34). Plaintiff claims that he was unable to sleep due to a drafty window and the bone chilling temperature. He also alleges that the cell was dirty; the walls

and floor were covered in dirt, hair, garbage, and dust. Plaintiff claims that he was deprived of cleaning supplies and toothpaste to brush his teeth. On January 8, 2020, Plaintiff brought various issues about the housing conditions and medical treatment to Defendant Matherly's attention, but Defendant Matherly allegedly refused to take corrective action. Plaintiff states that he rescinded his hunger strike a week later and his toothpaste was returned to him.

Plaintiff requests a declaratory judgment affirming that the policies, customs, and practices implemented by the IDOC pertaining to his housing refusals on August 15, 2019 and December 11, 2019 were unconstitutional. He also claims that he was deprived of due process when he was forced to refuse his housing assignments on August 15, 2019 and December 11, 2019, and faced disciplinary action before the Adjustment Committee for disobeying a direct order.

Plaintiff was released from Hill Correctional Center on parole on January 11, 2022.

**ANALYSIS**

The statute of limitations is an affirmative defense but can be raised by the Court if the defense is obvious from the complaint. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit."). Congress did not specify a statute of limitations for civil rights claims under Section 1983. *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). In determining the statute of limitations for Section 1983 claims, federal courts have adopted the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations for personal injury claims is two years. 735 ILCS 5/13-202. Thus, a Section 1983 claim in a United States District Court in Illinois must be filed within two years of the accrual of the claim. A claim accrues for statute of limitations purposes when a plaintiff

6

knows of the fact and cause of an injury. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017).

Plaintiff filed his complaint on June 15, 2022. (Doc. 1). Plaintiff's claims related to his allegedly retaliatory roommate assignments on August 15, 2019 and December 11, 2019 and the alleged violations of due process are barred by the statute of limitations. The most recent allegations in his complaint involve the conditions of the cell he was placed in when he declared a hunger strike on January 5, 2020, but it appears that he rescinded his hunger strike a week later. Thus, any claim related to the conditions of his confinement would also be untimely. Plaintiff's complaint is DISMISSED without prejudice for failure to state a claim under Federal Rule Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. He will have the opportunity to replead within 30 days.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's complaint is dismissed without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(A). It is also barred by the two-year statute of limitations.

2. In the event that Plaintiff can demonstrate that his claims are timely, Plaintiff may file an amended complaint within 30 days from the entry of this Order. Plaintiff's amended complaint will replace his complaint in its entirety. The amended complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted. If Plaintiff fails to file a timely amended complaint, or if the amended complaint still fails to state a viable federal claim, then this action will be dismissed with prejudice.

ENTERED: 10/12/2022

s/ Joe Billy McDade  
Joe Billy McDade  
United States District Judge